UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-CV-236-BR

| | | |
|---|---|---|
| CONNIE JONES and STACY P. McCRAE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | ORDER |
| | ) | |
| AMERICAN AIRLINES, INC. and | ) | |
| G2 SECURE STAFF, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the 30 July 2008 motion of defendant American Airlines, Inc. ("American") to dismiss the amended complaint.[1] The motion has been fully briefed and is ripe for disposition.

## I. BACKGROUND

Plaintiffs filed this action as a proposed class action "on behalf of American Airlines, Inc. skycaps who are presently or formerly working at the Raleigh-Durham, Charlotte and Greensboro airports in North Carolina[,]" alleging violations of federal and state wage laws as well as other state law claims, based on "a $2 per bag service charge for curbside check in services [assessed by American] to its customers" and collected from plaintiffs, as well as American's deduction from plaintiffs' wages of a 30-minute unpaid meal break through which plaintiffs allege they generally are required to work. (Am. Compl. ¶ 1.) "Plaintiffs began their employment with American . . . as skycaps" and in 2006 continued to provide their services to American through a contract company,

---

[1] American filed the motion to dismiss as to plaintiffs' original complaint; however, on 3 September 2008, plaintiffs filed an amended complaint, and it appears from American's reply brief in support of its motion to dismiss that it seeks dismissal of the amended complaint for the reasons argued in its motion to dismiss the original complaint.

. . . G2 Secure Staff, LLC ("G2").[2]  (Id. ¶ 8.)  "As sky caps, [p]laintiffs were allowed to accept tips from air travelers and such tips were credited towards American and/or G2's obligation to pay minimum wages under Federal and North Carolina wage laws[,]" and plaintiffs allege that American is a "joint employer" of plaintiffs under 29 U.S.C. § 203(d).  (Id.)  "Sometime in 2006, American . . . instituted the $2 per bag service charge to its air travelers who chose to utilized [sic] curb side check in.  American . . . required that the sky caps pay to it the $2 per bag service charge, which the sky caps collected during each day at the end of his shift. As a result of this new policy, the sky caps' income has been drastically reduced . . . .  American . . . ha[s not] made any agreements with the sky caps regarding the reimbursement of the service charges . . . . [and] ha[s] not clearly communicated to their air traveling customers that the $2 per bag service charge is not a tip that is kept by the sky caps."  (Id. ¶ 9.)

Plaintiffs filed the instant action on 15 May 2008.  The amended complaint contains claims for violations of the North Carolina Wage and Hour Act ("NCWHA") and the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"); violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); tortious interference with contractual relationships; *quantum meruit*; conversion; and unjust enrichment.

## II.  DISCUSSION

A. Fed. R. Civ. P. 12(b)(6): Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6 ) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)

---

[2] On 10 September 2008, plaintiffs filed a notice of voluntary dismissal without prejudice as to G2.

-2-

(internal quotation marks and alterations omitted). In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993), cert. denied, 510 U.S. 1197 (1994). While the court must accept the plaintiff's factual allegations as true, the court "need not accept the legal conclusions drawn from the facts." Eastern Shore Markets, Inc. v. J.D. Associates Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). "Similarly, [the court] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id.

As the Supreme Court recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1965 (2007). A complaint will survive a Rule 12(b)(6) motion to dismiss if it sets forth "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

1. FLSA Claim

American argues that plaintiffs' FLSA claim must be dismissed because plaintiffs have not alleged sufficient facts to show that American was plaintiffs' joint employer. (Br. Supp. Mot. Dismiss at 4-6.)

> Separate persons or entities that share control over an individual worker may be deemed joint employers under the FLSA. According to the Department of Labor regulation:
> > if the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the [FLSA].

-3-

> 29 C.F.R. § 791.2(a) (emphasis added); see also Falk v. Brennan, 414 U.S. 190, 195, (1973) (observing in a FLSA case that apartment building maintenance workers were employed by both building management company and building owners). "[A]ll joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA], including the overtime provisions." 29 C.F.R. § 791.2(a). The regulation states that "a joint employment relationship generally will be considered to exist in situations such as:"
>> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
>> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.
>
> 29 C.F.R. § 791.2(b) (footnotes omitted). The joint employment inquiry must "take[] into account the real economic relationship between the employer who uses and benefits from the services of workers and the party that hires or assigns the workers to that employer." Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 193 (S.D.N.Y. 2003); see also Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 674-76 (1st Cir. 1998); Bonnette v. Calif. Health & Welfare Agency, 704 F.2d 1465, 1469-70 (9th Cir. 1983). The ultimate determination of joint employment must be based upon the "circumstances of the whole activity." Bonnette, 704 F.2d at 1470.

Schultz v. Capital Intern. Sec., Inc., 466 F.3d 298, 305-06 (4th Cir. 2006).

Plaintiffs point to paragraphs 8 and 9 of their amended complaint to support their contention that they have sufficiently alleged a joint employer relationship. Taken in the light most favorable to plaintiffs, the amended complaint alleges that plaintiffs: (1) "began their employment with American" before becoming employees of G2; (2) provided "curb side check in" to American's customers; and (3) as required by American, collected a $2 per bag service charge assessed by American to its customers for "curb side check in" and paid the collected fees to American. (Am. Compl. ¶¶ 8-9; see also Br. Opp. Mot. Dismiss at 3-4.)

The court concludes that plaintiffs have not sufficiently alleged that American is their joint

-4-

employer. Plaintiffs have made no allegations that American "exercised the power to hire and fire the plaintiffs, . . . [or] control[led] their wages, hours, and working conditions, as well as the quality standards that governed their work." Quinteros v. Sparkle Cleaning, Inc., 532 F. Supp. 2d 762, 775 (D. Md. 2008) (citing Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295, 331 (D.N.J. 2005)) (finding that a movie theater chain which hired a janitorial service company to clean its theaters was not a "joint employer" under FLSA even though movie theater chain oversaw the plaintiffs' work and directed their cleaning activities); see also Schultz, 466 F.3d at 306 (finding that an individual who hired a security agency to provide a personal security detail was a "joint employer" under FLSA with the security agency where he was involved in the hiring of agents, "handled agent work schedules, compensation, discipline, and terminations," and "shared responsibility for supplying the agents with equipment."). Accordingly, plaintiffs' FLSA claim must be dismissed.

    2. NCWHA Claim

American contends that, as with plaintiffs' FLSA claim, it is not an "employer" under the NCWHA and plaintiffs' NCWHA claim must therefore be dismissed. The court agrees.

> The [NCWHA] is modeled after the [FLSA] . . . . In determining the scope of the term "employee[,]" . . . [North Carolina c]ourt[s have] relied upon federal case law that interpreted the term "employee" as used in the FLSA . . . . Several factors used by federal jurisdictions to determine "employee" status under the FLSA are equally useful in the context of the [NCWHA]: (1) whether the alleged employee performs services for the employer; (2) "the degree of control exerted by the alleged employer" over the individual or entity; and (3) the alleged employee's opportunity for profit or loss derived from its relationship with the employer.

Laborers' Intern. Union of North America, AFL-CIO v. Case Farms, Inc., 127 N.C. App. 312, 314 (1997) (citations omitted). For the reasons given with regard to plaintiffs' FLSA claim, the court concludes that plaintiffs have not sufficiently alleged an employer-employee relationship with American under the NCWHA.

-5-

### 3. Conversion Claim

A claim for "conversion . . . has long been defined by the Supreme Court of North Carolina as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." Anderson v. Sara Lee Corp., 508 F.3d 181, 190 (4th Cir. 2007) (quotation and citation omitted). American contends that this claim must be dismissed because: (1) it is not plaintiffs' employer and therefore "cannot be held responsible for the alleged wage and hour violations that form the factual predicate for these claims[;]" (2) a conversion claim cannot lie based on "'employer-employee disputes over unpaid wages[;]'" and (3) by North Carolina regulation, service charges are not "tips" and therefore cannot belong to plaintiffs under the NCWHA.[3] (Br. Supp. Mot. Dismiss at 10-11 (quoting and citing Anderson, 508 F.3d at 190).)

The court disagrees and finds that plaintiffs have adequately pled this claim. A claim for conversion does not require a statutory violation as a predicate. Additionally, as noted above, plaintiffs have not sufficiently alleged that American is their employer, and therefore plaintiffs' claim for conversion is not an "employer-employee dispute[] over unpaid wages[,]" Anderson, 508 F.3d at 190, and a regulation permitting employers to "require[] the customer to pay" a service charge, 13 N.C.A.C. 12.0303(b), is not applicable.

### 4. UDTPA Claim

The UDTPA prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive practices, in or affecting commerce[.]" N.C. Gen. Stat. § 75.1-1(a). To establish a

---

[3] The regulation to which American refers provides that "A tip shall not include a service charge which the employer requires the customer to pay, no matter what the charge is labeled." 13 N.C.A.C. 12.0303(b).

claim under the UDTPA, a plaintiff must show that (1) the defendant committed an unfair or deceptive trade act or practice; (2) the action in question was in or affecting commerce; and (3) that act proximately caused injury to the plaintiff. First Union Nat. Bank v. Brown, 166 N.C. App. 519, 533 (2004). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive. Although it is a question of fact whether the defendant performed the alleged acts, it is a question of law whether those acts constitute an unfair or deceptive trade practice." Id. (quotation and citation omitted).

Plaintiffs allege that American "ha[s] not clearly communicated to [its] air traveling customers that the $2 per bag service charge is not a tip that is kept by" plaintiffs. (Am. Compl. ¶ 9.) American contends that this claim must be dismissed because "[t]he UDTPA does not normally extend to run-of-the-mill employment disputes, and some type of egregious or aggravating circumstances must be alleged and proved[, and] . . . . [t]he North Carolina Supreme Court has not recognized such a claim based on employer-employee disputes over unpaid wages." (Br. Supp. Mot. Dismiss at 12 (quotations omitted; citing Anderson, 508 F.3d at 190; Dalton v. Camp, 353 N.C. 647, 656 (2001)). Again, the court has found that plaintiffs have failed to allege an employer-employee relationship between themselves and American, and therefore there is no presumption against a UDTPA claim. See Gress v. Rowboat Co., Inc., ___ N.C. App. ___, 661 S.E.2d 278, 282 (2008) (reversing dismissal of UDTPA counterclaim where "defendants do not allege the existence of a true employer-employee relationship"). However, even in the absence of an employment relationship, the court finds that plaintiffs have not alleged any egregious or aggravating circumstances so as to

rise to the level of an unfair or deceptive act or practice and thereby avoid dismissal of the claim.[4]
See Wake County v. Hotels.com, LP, Nos. 06 CVS 16256, 07 CVS 585, 07 CVS 56, 06 CVS 10630, 2007 WL 4125456, *10 (N.C. Super. Nov. 19, 2007) (suits by various counties over unpaid hotel room occupancy taxes against companies which purchased blocks of hotel rooms and then offered the rooms to consumers via the internet at a higher rate; alleging UDTPA claim based on companies' failure to disclose occupancy tax to consumers; finding failure "to allege the type of egregious or aggravating circumstances that would warrant UDTPA liability" and questioning counties' standing to bring a UDTPA claim because to the extent it "is premised on the allegation that Defendants are misleading consumers by including in their retail room rates a charge for the Occupancy Tax that thereafter is not remitted fully to Plaintiffs . . . , the victims of this deceptive practice are not Plaintiffs, but rather . . . consumers").

    5. Tortious Interference with Contract Claim[5]

> To establish a claim for tortious interference with contract, a plaintiff must show: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.
> White v. Cross Sales & Eng'g Co., 177 N.C. App. 765, 768-69. Interference is without justification if a defendant's motive is not "reasonably related to the protection of a legitimate business interest." Privette v. University of North Carolina, 96 N.C. App. 124, 134 (1989) . . . . A complainant must show that the defendant acted with malice and for a reason not reasonably related to the protection of a legitimate business interest of the defending party. Market America, Inc. v. Christman-Orth, 135 N.C. App. 143, 158 (1999) (quotation omitted).

---

[4] For example, plaintiffs have not alleged that they were prohibited from informing the public that American collected a service charge from plaintiffs for their services to the public, regardless of whether the public paid the charge.

[5] Although American also seeks dismissal of a claim for tortious interference with prospective business advantage, (Br. Supp. Mot. Dismiss at 13-14), the court does not find such a claim alleged in either the original or the amended complaint.

Sellers v. Morton, ___ N.C. App. ___, 661 S.E.2d 915, 921 (2008) (some citations omitted).

"Plaintiffs have alleged that American's conduct in instituting the $2 per bag fee tortiously interfered with their contractual relationships with the flying public." (Br. Opp. Mot. Dismiss at 10.) American contends that this claim must be dismissed because (among other reasons) plaintiffs have failed to allege any malicious motive. (Br. Supp. Mot. Dismiss at 14.) The court agrees. "[G]eneral allegations of malice are insufficient as a matter of pleading" and the court "must determine whether plaintiffs[] have alleged a factual basis to support the claim of malice." Pinewood Homes, Inc. v. Harris, 184 N.C. App. 597, 605 (2007) (citation omitted). The complaint contains no allegation that would support a claim of malice: plaintiffs simply allege that American "began to assess" the service charge "[s]ometime in 2006," and that, "wholly without justification[,]" American has not informed the public of this charge. (Am. Compl. ¶¶ 1, 15.) Such allegations far fall short of plaintiffs' obligation to "allege facts demonstrating that [American's] actions were not prompted by legitimate business purposes." Embree Construction Group v. Rafcor, Inc., 330 N.C. 487, 500 (1992) (quotation and citation omitted).

      6. *Quantum Meruit*/Unjust Enrichment Claims[6]

To establish a claim for *quantum meruit*, a plaintiff must show three elements: (1) plaintiff conferred a measurable benefit to defendant, (2) defendant knowingly and voluntarily accepted the benefit, and (3) the benefit was not given gratuitously. See Booe v. Shadrick, 322 N.C. 567, 570 (1988).

"Quantum meruit is a measure of recovery for the reasonable value of services

---

[6] The court notes that plaintiffs amended the complaint "to address the technical pleading issues raised in the motion to dismiss[,]" (Br. Opp. Mot. Dismiss at 10), and therefore the court proceeds to consider the argument raised in American's reply brief.

-9-

> rendered in order to prevent unjust enrichment. It operates as an equitable remedy based upon a quasi contract or a contract implied in law . . . . An implied contract is not based on an actual agreement, and quantum meruit is not an appropriate remedy when there is an actual agreement between the parties. Only in the absence of an express agreement of the parties will courts impose a quasi contract or a contract implied in law in order to prevent an unjust enrichment." Paul L. Whitfield, P.A. v. Gilchrist, 348 N.C. 39, 42 (1998). "Unjust enrichment has been described as:
>> the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself [or herself] at the expense of another.
>
> Furthermore, the mere fact that one party was enriched, even at the expense of the other, does not bring the doctrine of unjust enrichment into play. There must be some added ingredients to invoke the unjust enrichment doctrine." Peace River Electric Cooperative, Inc. v. Ward Transformer Company, Inc., 116 N.C. App. 493, 509 (1994)[.]

Watson Electrical Const. Co. v. Summit Companies, LLC 160 N.C. App. 647, 652 (2003) (italics in original not supplied; some citations omitted). "The doctrine of unjust enrichment was devised by equity to exact the return of, or payment for, benefits received under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated. No contract, oral or written, enforceable or not, is necessary to support a recovery based upon unjust enrichment." Rhue v. Rhue, ___ N.C. App. ___, 658 S.E.2d 52, 57 (2008) (quotations and citations omitted).

American contends that these claims must be dismissed because plaintiffs have alleged neither a statutory nor a contractual entitlement to the service charge, and therefore "have alleged no basis for a conclusion that American's retention of the service charge was 'unjust'[.]" (Reply Supp. Mot. Dismiss at 8.) With regard to both their *quantum meruit* and unjust enrichment claims, plaintiffs allege that they "have rendered baggage handling services to [American], the baggage handling services were knowingly and voluntarily accepted by American, and . . . the services were

-10-

not given gratuitously to American." (Am. Compl. ¶¶ 16, 18.) With regard to their unjust enrichment claim, plaintiffs further allege that "American's failure to clearly communicate the nature and effect of the baggage handling fee is unjust[.]" (Id. ¶ 18.) The court finds that these claims have been sufficiently pled for purposes of Rule 12(b)(6). See, e.g., James River Equipment, Inc. v. Tharpe's Excavating, Inc., 179 N.C. App. 336, 346 (2006) (reversing 12(b)(6) dismissal of *quantum meruit* claim where "there was no express contract between plaintiff and" defendant, but complaint alleged that the plaintiff provided services to the defendant and "ha[d] not been paid.").

B. Preemption

Having found that plaintiffs' state law claims for conversion, *quantum meruit*, and unjust enrichment should not be dismissed under Fed. R. Civ. P. 12(b)(6), the court turns to American's argument that these claims are preempted by either the FLSA or the NCWHA, or the Airline Deregulation Act of 1978 ("ADA"). (Br. Supp. Mot. Dismiss at 20-24.) With regard to the FLSA and the NCWHA, because the court has found that plaintiffs have not alleged that American is their employer, any FLSA or NCWHA preemption is inapplicable. See, e.g., Martinez-Hernandez v. Butterball, LLC, No. 5:07-CV-174-H, 2008 WL 4360597, *2 (E.D.N.C. Sept. 2, 2008) (recognizing that in Anderson, 508 F.3d at 194, "the Fourth Circuit held that 'Congress prescribed exclusive remedies in the FLSA for violations of its mandates[,]'" but distinguishing Anderson because the plaintiffs had alleged NCWHA claims and therefore "are not merely using state law to enforce their rights under the FLSA" as in Anderson).

The ADA contains a preemption clause, which provides that states "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ." 49 U.S.C. § 41713(b)(1).

-11-

> The Supreme Court has broadly interpreted this language to mean that the ADA preempts any "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services.'" Morales v. Trans World Airlines, 504 U.S. 374, 384 (1992). Yet, it is also true that the ADA's preemptive reach does not extend to state actions that affect airline rates, routes, or services "in too tenuous, remote, or peripheral a manner." Id. at 390; see Smith v. Comair, Inc., 134 F.3d 254, 257 (4th Cir. 1998). Thus, preemption of a state law claim by the ADA requires the claim (i) to rely upon the enforcement of state law and (ii) to relate to an airline's rate, route, or service in more than an overly tenuous, remote, or peripheral a manner.

Continental Airlines, Inc. v. United Air Lines, Inc., 120 F. Supp. 2d 556, 570-71 (E.D. Va. 2000) (some citations omitted).

American contends that plaintiffs' claims "are based on the theory that American's imposition of a curbside baggage check-in fee was unlawful" and "if [p]laintiffs' claims can be maintained, then American is barred by state law from generating revenue through the imposition of a fee for curbside baggage check-in services." (Br. Supp. Mot. Dismiss at 23.) However, American misconstrues the nature of plaintiffs' claims. Plaintiffs do not seek to prevent American from assessing such a fee, they challenge the manner in which American collects the fee. See All World Prof'l Travel Servs., Inc. v. American Airlines, Inc., 282 F. Supp. 2d 1161, 1171 (C.D. Cal. 2003) (class action suit by travel agency over fee assessed by airline for processing ticket refunds; finding no ADA preemption on state law claims (including unjust enrichment claim) because "the claims here do not arise out of ticket refunds, but out of American's treatment of the manner in which the refund, which allegedly had to be paid, was processed by travel service agents. The distinction is substantial because while the former is a consideration when an air carrier sets it prices, the latter only has a remote relationship to prices, especially since the passenger refund had

already been paid.").⁷ Accordingly, the court concludes that plaintiffs' remaining state law claims are not preempted by the ADA.

III. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is ALLOWED IN PART, and plaintiffs' FLSA, NCWHA, and UDTPA claims, as well as their tortious interference with contract claim, are hereby DISMISSED. Plaintiffs' conversion and *quantum meruit*/unjust enrichment claims remain.

This 15 October 2008.

_____
W. Earl Britt
Senior U.S. District Judge

cj/aa/tec

---

⁷ By contrast, in the cases cited by American finding preemption, the plaintiffs were attempting to directly challenge an airline service. See Continental, 120 F. Supp. 2d at 561 (finding ADA preemption in suit by some airlines against other airlines challenging agreement to restrict the size of carry-on bags); DeLoach v. American Airlines, No. 5:03-CV-878-BO (E.D.N.C. April 20, 2004) (finding ADA preemption on UDTPA claim in suit by baggage delivery service because such a claim would provide "a means to guide and police the marketing practices of the airlines" (quotation and citation omitted)).